IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

JAMES A. LARRY,
        Plaintiff,

v.                                                    Case No. 1:25-cv-01005-JEH

ILLINOIS DEPARTMENT OF
CORRECTIONS, *et al.*,
        Defendants.

## Order

Plaintiff James Larry, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Pontiac Correctional Center ("Pontiac"). (Doc. 1). This case is before the Court for a merit review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### I

Plaintiff was transferred to Pontiac on June 26, 2024. Within days of his arrival, Plaintiff alleges he became ill after drinking the water and experienced an

upset stomach, diarrhea, vomiting, indigestion, constipation, a sore throat, and shortness of breath. Plaintiff submitted numerous sick call requests to no avail.

On October 22, 2024, Plaintiff submitted an emergency grievance to Pontiac's Warden, Defendant Mindi Nurse, who allegedly deemed the grievance non-emergent and took no action.

On November 18, 2024, Plaintiff saw Defendant Jade Sullivan, a registered nurse, for a sick call visit. Plaintiff explained his worsening symptoms and asked Defendant Sullivan to send him to "urgent health care treatment," but she allegedly refused. (Doc. 1 at p. 12). Plaintiff alleges Defendant Sullivan told him she would prescribe medication to treat his diarrhea, but he did not receive any medication until his next visit in December.

When Plaintiff saw Defendant Sullivan for another sick call visit on December 28, 2024, he received a blister pack of bismuth subsalicylate tablets (262 mg) for diarrhea and medication for his sore throat. Plaintiff again requested emergent care, but Defendant Sullivan instructed Plaintiff to take the medication for his sore throat for 30 days and submit another sick call request.

After three days of receiving the bismuth subsalicylate tablets, Plaintiff's prescription was discontinued. Plaintiff alleges he informed Defendant Sullivan that the constant diarrhea exacerbated his severe hemorrhoids, but she did not provide further medical treatment.

Plaintiff alleges that Defendants Illinois Department of Corrections ("IDOC"), Wexford Health Sources, Inc. ("Wexford"), and IDOC Acting Director Latoya Hughes failed to train and supervise employees "how to professionally or properly respond to and interact with individuals in custody with serious medical need(s) or who seek medical attention or care." *Id.* at p. 5.

Plaintiff alleges that Pontiac's drinking water has been legally classified as contaminated and unsafe to consume. Plaintiff attached a letter addressed to

Defendant Warden Nurse from the Illinois Environmental Protection Agency ("EPA") to his Complaint. *Id.* at pp. 31-38. Plaintiff alleges that Defendants IDOC, Wexford, Hughes, and Nurse were aware of the contaminated drinking water, deliberately turned a blind eye to this issue, and allowed Plaintiff to consume contaminated water. Plaintiff alleges he continues to experience a plethora of symptoms from the unsafe water.

## II

The Eighth Amendment requires the government to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Conditions of confinement that expose a prisoner to a substantial risk of serious harm are unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To demonstrate that prison conditions violated the Eighth Amendment, a plaintiff must allege facts that satisfy a test involving both an objective and subjective component. *Farmer*, 511 U.S. at 834.

The objective analysis focuses on whether prison conditions were sufficiently serious so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," *id.*, or "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).

The subjective component requires an allegation that prison officials acted wantonly and with conscious disregard of a known risk of serious harm to plaintiffs. *Id.* "Conscious disregard" means that defendants knew that plaintiffs faced a substantial risk of serious harm and yet disregarded that risk by failing to take reasonable measures to address it. *Farmer*, 511 U.S. at 847. Thus, it is not

enough for the plaintiff to prove that defendants acted negligently or should have known of the risk. *Pierson v. Hartley*, 391 F.3d 898 (7th Cir. 2004). The plaintiff must show that defendants received information from which an inference could be drawn that a substantial risk existed and that defendants actually drew the inference. *Id.* at 902.

Plaintiff alleges that Defendant Warden Nurse knew about the contaminated drinking water based on his emergency grievance and a letter from the Illinois EPA, but she allegedly allowed Plaintiff to continue consuming the water, causing him to become severely ill. Based on his allegations, the Court finds that Plaintiff has stated a plausible Eighth Amendment conditions-of-confinement claim against Defendant Nurse.

It is also well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer*, 511 U.S. at 834.

To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522.

To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional

4

wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

Based on his allegations, the Court finds that Plaintiff has adequately alleged that Defendant Sullivan was deliberately indifferent to his medical conditions allegedly caused by the contaminated drinking water in violation of the Eighth Amendment. However, Plaintiff has not demonstrated that Defendant Sullivan, who was a medical staff member, was personally involved in or responsible for the conditions of the drinking water at Pontiac. Therefore, Plaintiff's conditions-of-confinement claim against Defendant Sullivan is dismissed without prejudice.

Regarding Defendant Hughes, there is no *respondeat superior* liability under § 1983. Defendant Hughes cannot be liable based only on her status as IDOC Director. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). Plaintiff does not allege that Defendant Hughes was personally involved in any constitutional violation. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). Defendant Hughes is dismissed without prejudice.

Defendant Wexford may be liable under § 1983 only if it allowed an unconstitutional policy or practice which caused the harm. *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying *Monell* municipal liability to private corporations performing governmental functions). While private corporations will have liability for their own unconstitutional policy or practice, they do not have vicarious *respondeat superior* liability for the actions of others. *See*

*Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Plaintiff's formulaic recitation of the elements of a *Monell* claim does not suffice to allege a cause of action against Wexford. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Wexford is dismissed without prejudice.

The Eleventh Amendment bars Plaintiff's claim for damages against the IDOC, as the IDOC is not a "person" amenable to suit under § 1983. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Veal v. Illinois Dep't of Corr.*, No. 18-CV-0621-MJR, 2018 WL 3009265, at *2 (S.D. Ill. June 15, 2018). Plaintiff is no longer incarcerated at Pontiac and has not demonstrated a likelihood of return. As such, any claim for injunctive relief against the IDOC or Defendant Hughes is moot. Defendant IDOC is dismissed with prejudice.

## III

Finally, Plaintiff filed a Motion to Request Counsel asking the Court to appoint an attorney to represent him. (Doc. 5). "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). When evaluating a request for counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Demonstrating a reasonable attempt to obtain counsel "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citing *Davis v. Moroney*, 857 F.3d 748, 753 (7th Cir. 2017)). Plaintiff has not demonstrated a reasonable attempt to secure his own lawyer. Therefore, Plaintiff's motion is denied with leave to renew. If Plaintiff renews his motion, he is directed to attach copies of letters he sent to or received from prospective counsel and list attorneys or law firms he contacted and indicate whether he received a response.

**IT IS THEREFORE ORDERED:**

1)    According to the Court's merit review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on (1) an Eighth Amendment conditions-of-confinement claim against Defendant Mindi Nurse based on the allegedly contaminated drinking water at Pontiac, which caused Plaintiff to become severely ill, and (2) an Eighth Amendment claim against Defendant Jade Sullivan based on her alleged deliberate indifference to Plaintiff's medical conditions caused by the contaminated drinking water. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)    Defendants Wexford Health Sources, Inc. and Latoya Hughes are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 1915A. Defendant Illinois Department of Corrections is DISMISSED WITH PREJUDICE. The Clerk is directed to TERMINATE these Defendants.

3)    Plaintiff's Motion to Request Counsel [5] is DENIED.

4)    This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5)    The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require

7

Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6)     Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7)     If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8)     This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be

returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: March 4, 2025

s/Jonathan E. Hawley
U.S. District Judge

9